# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANKLIN STYER, | : | |
| | : | |
| Plaintiff, | : | No. 1:13-CV-00833-YK |
| | : | |
| v. | : | Judge Yvette Kane |
| | : | |
| FRITO-LAY, INC., | : | (Magistrate Judge Carlson) |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

I. **INTRODUCTION**

The plaintiff, Franklin Styer, instituted this workplace discrimination action on April 2, 2013, by filing a complaint, through counsel, alleging, *inter alia*, that his former employer Frito-Lay, Inc. ("Frito Lay"), violated Title VII of the Civil Rights Act of 1964 by creating and maintaining a hostile work environment, engaged in retaliatory harassment of the plaintiff and discriminated against the plaintiff based on race, all of which Styer claims resulted in his involuntary resignation. The complaint was later amended to include additional facts and to identify the date on which Styer received a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC). (Doc. 12.)

Currently pending before the court is the defendant's motion to dismiss the amended complaint for failure to state a claim upon which relief can be granted or, in

the alternative, a motion for summary judgment pursuant to Federal Rules of Civil Procedure 12 (b)(6) and 56(a), respectively. (Doc. 16.) The motion has been fully briefed and referred to the undersigned for purposes of preparing a report and recommended disposition. For the reasons that follow, we find that the plaintiff has met his burden at the pleading stage of alleging claims that fell within tthe scope of the original allegations investigated by the EEOC, and therefore the motion to dismiss should be denied.

## II.     BACKGROUND

Plaintiff was hired by Frito Lay In or about November, 2005 to work as a warehouse janitor in a plant located in York, Pennsylvania. (Doc. 12, ¶ 5.) By all accounts, Styer was a satisfactory employee, receiving high marks on performance evaluations, as well as awards and promotions during his more than six years working at the plant. (Doc. 12, ¶¶ 6, 7.) Then, around late summer of 2010, Styer's co-workers allegedly "began a campaign of relentless racially-based, slander and hostility directed specifically towards the [him]." (Doc. 12, ¶ 10.) Those involved in this campaign include three warehouse coordinators and a material handler, all Caucasian, all of whom are alleged to have participated in actions that included the use of racial slurs, physical aggression, vandalism, a collective refusal to train the plaintiff, and even the sabotage of Styer's forklift (Doc. 12, ¶¶ 11, 12.) Plaintiff documented each instance

for over a year and complained to Frito Lay management, even going so far as to personally telephone Barbara Buchanan, a vice-president of the company. (Doc. 12, ¶¶ 12, 13.) No action was taken by management or by Ms. Buchanan, even after she visited and toured the York plant. (Doc. 12, ¶ 14.)

When plaintiff was promoted to his forklift position in November of 2011,[1] he alleges that the "racial language and abusive hostility" increased. (Doc. 12, ¶ 15.) Styer alleges that it was at this point that warehouse management devised a plan so that Styer would fail at his new placement and as such he only received one day of training without any hands-on guidance. (Doc. 12, ¶ 9.) It was also in 2011 when plaintiff alleges that his health began to deteriorate because of work-related stress. (Doc. 12, ¶ 18.) The alleged disparate treatment that the plaintiff received and his complaints regarding the same, culminated in a February 2012 "round table discussion" where a Caucasian warehouseman announced that "black people are treated differently." (Doc. 12, ¶ 16.) No corrective action was taken after this meeting and plaintiff took medical leave under the short term disability plan approximately one month later. (Doc. 12, ¶¶ 17, 18.) When the plaintiff returned to work the next month the alleged hostile and

---

[1] Notably, the promotion to fork lift operator, which elevated the plaintiff from part-time status to full-time status making him eligible for overtime and medical benefits occurred over one year after the plaintiff's supervisors and co-workers were creating a hostile work environment for him. See, Doc. 12, ¶ 8.

racially discriminatory behavior of Styer's co-workers and supervisor had not changed and the plaintiff's health worsened. (Doc. 12, ¶¶ 19-21.) Plaintiff resigned his employment from Frito Lay in May of 2012 due to health reasons and what he perceived to be an unresolved hostile work environment. (Doc. 12, ¶ 22.)

On or around April 13, 2012, Plaintiff dual filed an amended complaint with the Pennsylvania Human Relations Commission (PHRC) and the EEOC alleging "race" and "harassment (class related)" discrimination based on the facts outlined above. (Doc. 12, p. 1.) Styer received a right to sue letter on January 9, 2013 and proceeded with this action. (Doc. 12, ¶ 23.) The defendant thereafter filed the pending motion to dismiss or, in the alternative, for summary judgment that is before the court.

### III. STANDARD OF REVIEW

#### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no

set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. Id. at 556. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotation marks omitted) (quoting Twombly, 550 U.S. at 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v.

Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment."). However, the court may not rely on other parts of the record in determining a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien &Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

### B. Summary Judgment - Rule 56

Rule 56(a) of the Federal Rules of Civil Procedure provides as follows:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a). For purposes of Rule 56, a fact is material if proof of its existence of nonexistence might affect the outcome of the suit under the applicable substantive law. Haybarger v. Laurence Cnty. Adult Prob. & Parole, 667 F.3d 408, 412 (3d Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). For an issue to be genuine, "all that is required is that sufficient evidence

6

supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Id. (quoting Anderson, 477 U.S. at 248-49).

Accordingly, in support of a motion for summary judgment, the moving party must show that if the evidence of record were reduced to admissible evidence in court, it would be insufficient to allow the non-moving party to carry its burden of proof. See Celotex v. Catrett, 477 U.S. 317, 323 (1986). Provided the moving party has satisfied this burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007). Instead, if the moving party has carried its burden, the non-moving party must then respond by identifying specific facts, supported by evidence, which show a genuine issue for trial, and may not rely upon the allegations or denials of its pleadings. See Martin v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007); see also Fed. R. Civ. P. 56(c).

In adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party, Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. Id. Additionally, the court is not to decide whether

the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Id. at 252; see also Big Apple BMW, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the factfinder to ascertain the believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011).

## IV. **DISCUSSION**

The issue before this court in this case is whether the plaintiff has exhausted all of his statutorily mandated administrative remedies before he filed suit in federal court, particularly pertaining to the alleged retaliation and constructive discharge from employment with Frito Lay. Title VII of the Civil Rights Act of 1964 prescribes certain administrative remedies and procedures that must be followed and exhausted before an aggrieved employee may bring a civil action in court. See 42 U.S.C. § 2000e-5. Relevant to this litigation, the statute requires that an administrative charge be filed with the EEOC or a parallel agency, such as the PHRC prior to proceeding to federal court. Id.

The instant motion contends that Styer failed to fully exhaust these administrative remedies, because he did not amend his administrative complaint to allege subsequent acts of retaliation and constructive discharge, acts which are alleged to have occurred after the EEOC proceedings commenced. In this case, Styer filed an administrative complaint jointly with the EEOC and the PHRC and subsequently amended that administrative complaint. Styer filed his amended administrative complaint approximately one month before he resigned from his position with Frito Lay, and perhaps as a result the alleged retaliation and constructive discharge allegations were not included in that amended administrative complaint. However, Plaintiff argues that the retaliation and constructive discharge allegations were closely

9

related to the harassment allegations he did raise in his amended complaint, and as such he maintains that he was not required to amend his complaint with the PHRC any further to include the retaliation and constructive discharge allegations.

In order to determine if a complaining party has properly exhausted his administrative remedies prior to bringing suit, courts are to examine "whether the acts in the subsequent Title VII suit are fairly within the scope of the prior [agency] complaint or the investigation arising therefrom." Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996); see also Anjelino v. New York Times Co., 200 F.3d 73, 93 (3d Cir. 2000) ("[S]uits in the district court are limited to matters of which the EEOC has had notice and a chance, if appropriate, to settle."). In addition, the court of appeals has explained that while these preliminary steps to filing suit are both important and necessary, they are to be interpreted in "a nontechnical fashion." Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398 (3d Cir. 1976). Moreover, the statute provides that the aggrieved employee should file charges that would put the employer on notice of the claims against it. See 42 U.S.C. §2000e-5(e). Courts have generally determined that the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge, including new acts which occurred during the pendency of proceedings before the Commission. Id. at 398-99 (citations omitted).

Further, in construing this exhaustion requirement, courts have recognized that workplace conditions do not remain static while an EEOC inquiry is on-going. Therefore, the courts have not interpreted this exhaustion requirement in a rigid and mechanical fashion requiring the plaintiff to alert the court to every new grievance or concern which arises in the workplace. As the court of appeals has explained:

> Where discriminatory actions continue after the filing of an EEOC complaint, however, the purposes of the statutory scheme are not furthered by requiring the victim to file additional EEOC complaints and re-starting the 180 day waiting period. This court has recognized this fact in permitting suits based on new acts that occur during the pendency of the case which are fairly within the scope of an EEOC complaint or the investigation growing out of that complaint, without requiring the victim to file additional EEOC complaints and wait another 180 days to sue. See Hicks v. ABT Associates, 572 F.2d 960, 966 (3d Cir.1978); Ostapowicz v. Johnson, 541 F.2d 394, 399 (3d Cir.1976), cert. denied, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977). See also Gupta v. East Texas State University, 654 F.2d 411 (5th Cir. Unit A 1981). The rationale behind these decisions is that once the EEOC has tried to achieve a consensual resolution of the complaint, and the discrimination continues, there is minimal likelihood that further conciliation will succeed. This slim likelihood of successful conciliation does not justify forcing the victim to wait an additional 180 days to file suit. The relevant test in determining whether appellant was required to exhaust her administrative remedies, therefore, is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom. See Hicks, 572 F.2d at 965-66; Ostapowicz, 541 F.2d at 398-99; Gamble v. Birmingham Southern Railroad Co., 514 F.2d 678, 689-90 (5th Cir.1975).

Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984).

"Factors the district court may consider in making this determination include . . . whether the previous . . . complaints alleged the same retaliatory intent inherent in the retaliatory discharge claim, Waiters, 729 F.2d at 238, . . . ; and . . . whether the EEOC should have been put on notice of [the] claim of retaliatory discharge and therefore investigated that claim." Robinson v. Dalton, 107 F.3d 1018, 1026 (3d Cir. 1997).

In the case before the court, the defendant has challenged the inclusion of the plaintiff's claims of retaliation and constructive discharge in this civil action, arguing that these claims were not fairly within the scope of the claims alleged in the plaintiff's administrative complaints. It is undisputed that Styer filed his complaint with the EEOC and PHRC prior to leaving Frito Lay and never amended the complaint after he left the company to include specific claims for retaliation and constructive discharge. Nevertheless, Plaintiff argues that the constructive discharge and retaliation counts are reasonably within the scope of the underlying allegation of a hostile work environment, and that the retaliation and constructive discharge claims arose out of the underlying hostile work environment allegations and subsequent administrative proceedings. In essence, Styer argues that the combination of events that transpired and ended with what he claims was a constructive discharge effectively put Frito Lay, the EEOC and the PHRC on notice of all claims raised in this lawsuit.

In Styer's complaint and subsequent amended complaint he alleges that the pervasive discrimination he experienced from his supervisors and co-workers was continuous for a period exceeding one year. The plaintiff enumerates many instances of alleged discrimination in the workplace, including racial slurs being directed at him, tampering with his equipment, and hiding the keys to his forklift. Plaintiff avers that he reported each incident to his superior to no avail, and further states that he was subject to additional acts of discrimination following these reports, a factual chronology which may give rise to an inference of retaliation. For example, at one point a mediation session was held with Plaintiff and the parties responsible for the alleged discrimination where one of Plaintiff's co-workers stated that black men were treated differently within the plant. However, when the mediation session ended, no actions changed among the parties and the allegedly pervasive and continuous acts of discrimination went on and no one was ultimately held accountable.

Styer resigned from his position with Frito Lay approximately one month after filing his amended complaint with the PHRC and EEOC. Because it appears that these agencies were actively investigating Styer's hostile work environment claims when Styer resigned from his position, we conclude that this on-going agency investigation could reasonably have embraced the circumstances of Styer's separation from his employment. We further note that, if the EEOC administrative record shows that is

conclusion is in error, the defendant remains free to file a properly documented summary judgment motion addressing this claim. We also find that the chronology of Styer's complaint, which alleges acts of discrimination, both before and after Styer brought his concerns to the attention of management, permits an inference that the EEOC investigation examined acts of discrimination and retaliation in the workplace, since hostile acts occurring after an employee complains may give rise to a inference of retaliation for those complaints.

In reaching this conclusion we are mindful that the permissible scope of a Title VII suit is "defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Ostapowicz, 541 F.2d at 398-89. We also acknowledge that: "[w]here discriminatory actions continue after the filing of an EEOC complaint, however, the purposes of the statutory scheme are not furthered by requiring the victim to file additional EEOC complaints and re-starting the 180 day waiting period. This court has recognized this fact in permitting suits based on new acts that occur during the pendency of the case which are fairly within the scope of an EEOC complaint or the investigation growing out of that complaint, without requiring the victim to file additional EEOC complaints". Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984). Finally, we recognize that "[f]actors the district court may consider in making this determination include . . . whether the previous . . . complaints alleged the

same retaliatory intent inherent in the retaliatory discharge claim, Waiters, 729 F.2d at 238, . . . ; and . . . whether the EEOC should have been put on notice of [the] claim of retaliatory discharge and therefore investigated that claim." Robinson v. Dalton, 107 F.3d 1018, 1026 (3d Cir. 1997).

In this case, and at this stage of the litigation where we are presented with an incomplete factual record, we cannot conclude that the plaintiff's claims for retaliation and constructive discharge, which are based on conduct occurring shortly after he initiated administrative proceedings, and which bear substantial relation to the underlying charge of workplace discrimination, do not fairly fall within the scope of the plaintiff's administrative claims. For that reason, we do not embrace the defendant's argument that the plaintiff's technical failure to bring additional allegations of retaliation, discrimination and eventual discharge through a second amended complaint should result in the complete dismissal of these claims from this action. These claims arose only after the plaintiff had initiated administrative proceedings, through which he placed the defendant and administrative agencies on notice regarding the allegedly racially discriminatory work environment at Frito Lay's plant, and concerned conduct and an eventual separation from employment that occurred while administrative agencies would have been in a position to investigate the plaintiff's claims of workplace discrimination.

To the extent additional facts are developed to show that the plaintiff's claims of retaliation and constructive discharge fell so far outside the scope of the administrative investigation into his claims that it cannot reasonably be considered to have been within the administrative agencies' investigations, the defendants may consider whether to raise this issue again at summary judgment. However, on the basis of the allegations in the complaint, we recommend that the defendant's motion to dismiss the plaintiff's claims for retaliation and constructive discharge be denied at this time.

## V. **RECOMMENDATION**

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED THAT Defendants' motion to dismiss Plaintiff's amended complaint (Doc. 16) be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days of being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply.

A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

_____
Martin C. Carlson
United States Magistrate Judge

Dated: November 15, 2013