**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **FRANKLIN STYER,** | : Civil No. 1:13-CV-833 |
| | : |
| **Plaintiff,** | : |
| | : (Judge Yvette Kane) |
| v. | : |
| | : |
| **FRITO-LAY, INC.,** | : (Magistrate Judge Carlson) |
| | : |
| **Defendant.** | : |

**MEMORANDUM OPINION**

**I.   Statement of Facts and of The Case**

The plaintiff, Franklin Styer, instituted this workplace discrimination action on April 2, 2013, by filing a complaint, through counsel, alleging, *inter alia*, that his former employer Frito-Lay, Inc. ("Frito Lay"), violated Title VII of the Civil Rights Act of 1964 by creating and maintaining a hostile work environment, engaged in retaliatory harassment of the plaintiff and discriminated against the plaintiff based on race, all of which Styer claims resulted in his involuntary resignation.

This case has been marked by contentious periods of discovery. In this regard, the initial discovery schedule in this litigation was set by Judge Kane on July 10, 2013. (Doc. 21.) That discovery order directed that expert witness discovery be conducted by November 2013. (Id.)

Following the entry of this initial discovery and case management order, discovery deadlines in this case had to be extended on a number of occasions. In many instances, the root cause of these discovery delays were allegations that the plaintiff has been dilatory in discovery. For example, in November 2013, the defendant was compelled to move to extend the discovery deadlines in this case, reciting that on September 13, 2013, defendant served plaintiff with Interrogatories and Request for Production of Documents. Responses to these Interrogatories and Requests for Production were due on or about October 16, 2013, but were not received until six weeks later on November 20, 2013. (Doc. 26.) These delinquent responses revealed for the first time that the plaintiff was receiving Social Security benefits, a new factual matter which compelled an extension of the discovery deadlines.

In January 2014, we were then called to address additional, dilatory discovery by the plaintiff, a failure to timely produce documents which had long been sought by the defendant. (Doc. 30.) This tardiness compelled another conference with counsel, (Doc. 31.), and yet another order revising the discovery schedule in this case. (Doc. 32.) In connection with this discovery conference the court also endeavored to explain for counsel in clear and precise terms that there could be no further unwarranted delays in disclosure of discoverable information, advising plaintiff's counsel that "In light of this representation, [that all documents in the plaintiff's possession had been

produced and provided to defense counsel] it is anticipated that there will be no further disclosures . . . by the plaintiff, except in those instances in which newly discovered matters come to the attention of counsel." (Id.)

The revised discovery deadline set by the court in this matter was Monday, May 12, 2014. (Id.) Notably, though, none of these orders extending fact discovery modified the expert witness disclosure deadline set by Judge Kane of November 2013. Nor did the plaintiff ever seek to extend any expert discovery schedule. Moreover, at no time did the plaintiff's counsel indicate that he may have other belated expert discovery disclosures that he intended to make in the course of discovery.

Notwithstanding these prior conferences, admonitions and orders, fact witness discovery was also conducted by the plaintiff in a dilatory fashion, with plaintiff's counsel neglecting to schedule or conduct fact witness depositions until the eve of the expiration of discovery, on May 1, 2014. This dilatory conduct was all the more puzzling because it became evident that defense counsel had diligently attempted to arrange the timely scheduling of these deposition throughout 2014. (Doc. 36.) Moreover, this episode of tardiness came to the court's attention in what was almost an ironic fashion, with the plaintiff, who had been the architect of these delays, moving for sanctions against the defendant, who had diligently strived to schedule these depositions for many months. (Compare Doc. 35 with 36.)
3

Yet, even as the plaintiff was seeking to compel last minute fact witness discovery and sanctions from the defendant on May 8, 2014, plaintiff's counsel did not disclose the identify of a putative expert witness that the plaintiff intended to rely upon at trial, Dr. Christine Ebong, the plaintiff's treating psychiatrist. The failure to make this disclosure was both puzzling and prejudicial to the defendants.

The failure to make this disclosure was puzzling because Dr. Ebong had treated the plaintiff since 2012, and, therefore, was known to the plaintiff prior to the initiation of this lawsuit, yet her identity as a potential expert witness had not been previously disclosed. This disclosure had not occurred at the outset of the litigation. It had not taken place within the November 2013 deadline prescribed by Judge Kane. It had not occurred in connection with either of the two prior extensions of discovery that the defendant was compelled to seek due to the plaintiff's's past dilatory behavior. It had not taken place after the plaintiff was admonished in January 2014 that: "In light of this representation, [that all documents in the plaintiff's possession had been produced and provided to defense counsel] it is anticipated that there will be no further disclosures . . . by the plaintiff, except in those instances in which newly discovered matters come to the attention of counsel." (Doc. 32.)

Instead, that disclosure was only made to the defendant at 3:04 p.m. on May 8, 2014, on the Friday afternoon before the Monday discovery deadline expired. (Doc.

37-1.) Thus, in the face of deadlines, admonitions, and orders which consistently called for prompt disclosures, plaintiff's counsel waited until virtually the last conceivable moment to reveal a fact known to the plaintiff for two years; namely, that the plaintiff had a treating psychiatrist who would testify as a expert witness to his injuries, and to their causation.

It is against this background that the defendant has moved to strike this expert witness designation. (Doc. 37.) This motion is fully briefed by the parties, (Docs. 38, 41, and 43.), and is, therefore, ripe for resolution. For the reasons set forth below, the motion will be granted in part, as follows: Dr. Ebong will be permitted to testify as a fact witness to her treatment of the plaintiff, but due to the dilatory course of discovery and expert witness designation in this case, the designation of Dr. Ebong as a expert witness will be stricken.

## II. Discussion

Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion also extends to decisions regarding sanctions for the failure to make timely and complete discovery. In this regard:

> Rule 37 of the Federal Rules of Civil Procedure governs sanctions against a party who fails to provide discovery as required by the discovery rules or a court order. The court must analyze whether the defalcation is by the party, the attorney, or both. Rule 37 sanctions are available to the district court "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent," Nat'l Hockey League v. Metro. Hockey Club, 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). The court has broad discretion regarding the type and degree of sanctions it can impose, see Coca–Cola Bottling Co. of Shreveport, Inc. v. Coca–Cola Co., 110 F.R.D. 363, 367 (D.Del.1986) (citing Nat'l Hockey League, 427 U.S. at

642, 96 S.Ct. 2778), but the sanctions must be just and related to the claims at issue. Estate of Spear v. Comm'r of Internal Revenue Serv., 41 F.3d 103, 109 (3d Cir.1994) (citing Ins. Corp. of Ireland v. Compagnie des Bauxites, 456 U.S. 694, 707, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)). Rule 37(b)(2) specifically provides for several sanctions, including discretion to deem facts as established, bar evidence, strike or dismiss pleadings, enter a default judgment, and find a party in contempt.

Wachtel v. Health Net, Inc., 239 F.R.D. 81, 84 (D.N.J. 2006). Likewise, "'The trial court's exclusion of testimony because of the failure of counsel to adhere to a pretrial order will not be disturbed on appeal absent a clear abuse of discretion.' Semper v. Santos, 845 F.2d 1233, 1238 (3d Cir.1988)." Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 719 (3d Cir. 1997).

In this case, Styer argues that the court should impose no sanction for his belated disclosure of this long-standing and long known medical expert. In this regard, Styer's argument rest on three pillars, none of which ultimately support his position in our view. First, Styer relies on a narrow crabbed reading of Judge Kane's discovery order. He then couples that strained reading of this discovery order with a sweeping suggestion that extraordinary diligence by defense counsel ferreting through the other material that Styer belatedly disclosed might have allowed the defense it divine what should have been disclosed. Finally, Styer urges us to embrace his exceedingly fine parsing of the language of Rule 26.

According to Styer, he construed the November 2013 expert witness discovery deadline set by the district court to apply only to written reports of retained experts under Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. Styer then described Dr. Ebong as an expert witness under Rule 26(a)(2)©. Having unilaterally characterized both the district court's discovery order and his own expert in these fashions, Styer then suggested that he had no duty whatsoever to disclose the identity of this expert until the very eve of the discovery deadline.

Astonishingly, Styer then supports this position with a citation to a case, Damiani v. Momme, No. CIV.A. 11-2534, 2012 WL 1657920, at *3 (E.D. Pa. May 11, 2012), which seems to profoundly undercut his argument on several fundamental scores. Damiani involved an instance in which plaintiff's counsel belatedly disclosed an expert report of a treating physician which he intended to call as an expert witness on issues of causation. Noting the untimely expert designation, and the prejudice to the defense caused by this belated designation, the trial judge allowed the physician to testify as a fact witness but struck the witness as an expert on issues of causation, precluding such expert testimony. Id. Thus, Damiani simply does not endorse the notion that one can effectively hide a medical expert witness through the simple expedient of calling the medical expert a treating physician. Rather, it contradicts this argument. Morever, plaintiff counsel's reliance on Damiani to support this

8

unsupportable position is particularly shocking since plaintiff's counsel was the attorney who was sanctioned in Damiani through the exclusion of this expert causation testimony. Id. Thus, contrary to Styer's argument in this case, the exclusion of such expert medical witness testimony by a treating physician whose expert report was belatedly disclosed is precisely the sanction previously imposed on plaintiff's counsel in Damiani. Moreover, the exclusion of such tardy medical expert testimony on causation is typically the course followed by courts when they are presented with delinquent expert designations of treating physicians, like those confronting us here. Such treating physicians are routinely precluded from testifying as expert witnesses on causation but may testify as fact witnesses. See e.g., Allen v. Parkland Sch. Dist., 230 F. App'x 189, 194 (3d Cir. 2007); Brooks v. Union Pac. R. Co., 620 F.3d 896, 900 (8th Cir. 2010); Kachigian v. Berkshire Life Ins. Co. of Am., No. CIV.A. 09 6217 DEA, 2013 WL 1338288, at *10 (D.N.J. Apr. 1, 2013).

Here we will decline Styer's invitation to endorse and embrace this practice of eleventh hour disclosure of expert witnesses for at least seven reasons.

First, we reject Styer's reading of Judge Kane's discovery order, an order which explicitly called for early expert disclosure, as silently endorsing the belated disclosure

of his expert witness. Such an interpretation, in our view, flies in the face of the plain language of the order itself.[1]

Second, we find, as the court found in Damiani, that this form of belated disclosure his highly and unfairly prejudicial to the defendant, yet another factor which warrants some sanction in the form of exclusion of this expert testimony.

Third, we are constrained to conclude that Styer's failure was not accidental or inadvertent, but appears to have been tactical and intentional. Dr. Ebong was known to the plaintiff in 2012, prior to the filing of the lawsuit. Yet, her potential expert witness status was only disclosed to the defense two years later on May 8, 2014, on the very eve of the discovery deadline.

Fourth, as the plaintiff's counsel has noted for us through his citation to Damiani v. Momme, No. CIV.A. 11 2534, 2012 WL 1657920, at *3 (E.D. Pa. May 11, 2012), this is not the first occasion in which counsel's practice of belated medical

---

[1] Of course if Styer's counsel believes that we have erred in our reading Judge Kane's order by failing to recognize that this order, which expressly called for candor, implicitly authorized concealment, he may test that proposition by appealing this order to the district court. We note for the parties that under 28 U.S.C. § 636(b)(1)(A) the parties may seek review of this order by filing a motion to reconsider with the district court since: "A judge of the [district] court may reconsider any . . . matter [decided under this subparagraph] where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

expert disclosure has led to some form of sanction. This factor, too, weighs again the plaintiff.

Fifth, the facts of this case, which was plagued by discovery delinquencies by the plaintiff, and admonitions to ensure scrupulous discovery practices, should have underscored for plaintiff's counsel the absolute necessity of avoiding practices like those which he had previously undertaken in Damiani v. Momme, No. CIV.A. 11-2534, 2012 WL 1657920, at *3 (E.D. Pa. May 11, 2012). This consideration also weighs heavily against the plaintiff and calls for some sanction.

Sixth, the exclusion of expert causation testimony from this belatedly disclosed expert witness is entirely consistent with settled case law, which endorses the practice of precluding treating physicians who are belatedly identified as experts from testifying as expert witnesses on causation but permitting limited testimony as fact witnesses. See e.g., Allen v. Parkland Sch. Dist., 230 F. App'x 189, 194 (3d Cir. 2007); Brooks v. Union Pac. R. Co., 620 F.3d 896, 900 (8th Cir. 2010); Kachigian v. Berkshire Life Ins. Co. of Am., No. CIV.A. 09 6217 DEA, 2013 WL 1338288, at *10 (D.N.J. Apr. 1, 2013); Damiani v. Momme, No. CIV.A. 11-2534, 2012 WL 1657920, at *3 (E.D. Pa. May 11, 2012).

Finally, and most fundamentally, we find that this practice ignores the cardinal principles that should govern federal discovery practice. The hallmarks of discovery

in federal court are, and should be, openness, transparency, and candor. Gamesmanship, ambush, surprise, and concealment have no place in federal practice. Here, we find that the course of expert witness disclosure in this case has been antithetical to the guiding principles which animate discovery in federal court, and this practice should not be endorsed or approved by this court.

### III.    Conclusion

Accordingly, for the foregoing reasons the motion to strike expert witness designation is GRANTED, in part, as follows: The designation of Dr. Ebong as an expert witness is stricken and Dr. Ebong may not testify as an expert witness on any matters relating to causation or prognosis. Dr. Ebong's testimony, if any, should be limited to that of a fact witness. See e.g., Allen v. Parkland Sch. Dist., 230 F. App'x 189, 194 (3d Cir. 2007); Brooks v. Union Pac. R. Co., 620 F.3d 896, 900 (8th Cir. 2010); Kachigian v. Berkshire Life Ins. Co. of Am., No. CIV.A. 09 6217 DEA, 2013 WL 1338288, at *10 (D.N.J. Apr. 1, 2013); Damiani v. Momme, No. CIV.A. 11-2534, 2012 WL 1657920, at *3 (E.D. Pa. May 11, 2012).[2]

---

[2]In imposing this limitation upon the plaintiff, we note in the alternative that, if the plaintiff regards this limitation as an undue hardship, the court would be prepared to further consider alternative sanctions such as directing the plaintiff to incur the full costs of any necessary additional defense expert discovery, including the cost of deposing Dr. Ebong, as well as the potential cost of securing an independent examination of the plaintiff, and additional defense expert testimony. Such cost shifting is an alternate way of mitigating prejudice caused by unfair discovery

So ordered this 18th day of March, 2015.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

---

practices, and has been endorsed by the court of appeals as an appropriate measure to address discovery misconduct. <u>Race Tires Am., Inc. v. Hoosier Racing Tire Corp.</u>, 674 F.3d 158, 171 (3d Cir. 2012)